UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID R. HILL,

    Plaintiff,

v.                                              Case No.: 8:15-cv-1662-T-17-EAK-MAP

STATE FARM INSURANCE COMPANY,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO STRIKE

This matter comes before the Court pursuant to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint or Alternative Motion to Strike, (Doc. 16), and Plaintiff's Memorandum of Law in Opposition. (Doc. 17). Defendant's Motion to Dismiss is **GRANTED in PART** and **DENIED in PART**, and Defendant's Alternative Motion to Strike is **DENIED**.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff David Hill alleges that Defendant State Farm Insurance Company ("State Farm"), through its agent in Ohio, fraudulently induced him into taking out two whole life insurance policies. Hill further claims that State Farm breached both contracts when it converted them to term life insurance and paid out their respective benefits even though he was current on all premium payments.

Hill originally filed suit in state court. (Doc. 1). State Farm removed the case pursuant to 28 U.S.C. § 1441(a), invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1). Hill is a resident of Florida and State Farm is a corporation organized and incorporated pursuant to the laws of the state of Illinois with its principal place of business in Illinois. (Doc. 1). State Farm moved to dismiss Hill's original complaint, (Doc. 3), with an accompanying Memorandum of Law in support, (Doc. 7), and Hill responded by filing his Amended Complaint. (Doc. 14). State Farm filed a Motion to Dismiss the Amended Complaint or Alternative Motion to Strike, (Doc. 16), and Hill filed a Memorandum in Opposition. (Doc. 17).

This action concerns two whole life insurance policies that Hill took out with State Farm, one in 1967 and a second in 1970. The facts pertaining to each policy are essentially the same. For each of the policies Hill contacted a State Farm agent in Ohio. (Doc. 17 at ¶¶ 5, 12). When Hill told the agent that it was important for him to have flexibility regarding the payment of premiums, the agent responded that "there would not be any negative consequences if he was to stop paying the premium[s] on the whole life insurance polic[ies], and that the polic[ies] would not cancel, [they] just would not increase in value as much." (Doc. 17 at ¶¶ 6–7, 13–14). Hill alleges that the agent made this same statement in regard to each policy. Relying on the agent's representations, Hill then purchased the two whole life insurance policies. (Doc. 17 at ¶¶ 8, 15).

Each policy states that it is an integrated agreement that may only be modified by express endorsement of State Farm's president, a vice-president, the secretary, or an assistant secretary of the company. (Doc. 3, Ex. A at 3; Doc. 3, Ex. B at 13). Further, both policies state, "[n]o agent has power on behalf of the company to make or modify this contract, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise or

representation or by giving or receiving any information."[1] (Doc. 3, Ex. A at 3; Doc. 3, Ex. B at 13).

Regarding the payment and non-payment of premiums, the policies provide that "[a]ll premiums after the first are payable in advance at the home office of the company, Bloomington, Illinois, or to an agent of the company, upon delivery of a receipt signed by the president, a vice-president, the secretary, or an assistant secretary, and countersigned by such agent." (Doc. 3, Ex. A at 3; Doc. 3, Ex. B at 11). The first policy's $178.60 premium was due annually on November 9, (Doc. 3, Ex. A at 1), and the second policy's $251.00 premium was due annually on September 2. (Doc. 3, Ex. B at 3). The policies also provide for a thirty-one day grace period for the payment of premiums, and if a premium remains unpaid at the end of the grace period then the "policy shall lapse, except as provided under . . . [the] Automatic Premium Loan" provision. (Doc. 3, Ex. A at 3; Doc. 3, Ex. B at 11).

The "Automatic Premium Loan" provision to which the grace period provision refers is an option that a policyholder may elect that empowers State Farm to pay an unpaid premium by taking out a loan against the policy. (Doc. 3, Ex. A at 4; Doc. 3, Ex. B at 11). In his application for each policy, Hill affirmatively elected to empower State Farm to use the Automatic Premium Loan procedure. (Doc. 3 at 20, 43).

In the event of non-payment, after the Automatic Premium Loan has been applied, the terms of the policies provide that the whole life insurance policies will automatically be converted to extended term life insurance policies. (Doc. 3, Ex. A at 7; Doc. 3, Ex. B at 14). The provision in each policy governing that procedure states, "This provision shall be automatically applied if any premium or balance thereof remains unpaid at the end of the grace period after

---

[1] The 1967 policy uses "agent," while the 1970 policy changed that to "other person." The difference is immaterial for the purposes of this case, as the alleged misrepresentations were made by an agent.

application of any credits, including . . . Automatic Premium Loan if elected by the insured." (Doc. 3, Ex. A at 7; Doc. 3, Ex. B at 14). A table included in each of the policies explains how the benefits of such a term policy would be paid out. (Doc. 3, Ex. A at 5; Doc. 3, Ex. B at 5).

Hill alleges that he had paid all premiums on both policies through 2009, yet State Farm activated the first policy's Automatic Premium Loan provision in November 2009 and the second policy's in January 2010, paid allegedly outstanding premiums on Hill's behalf, charged debts against the policies, and reported to the Internal Revenue Service ("IRS") gross distributions to Hill related to each policy. (Doc. 17 at ¶¶ 10–11, 17–18). For the 1967 policy, the allegedly outstanding premium amounted to $178.60 and the debt that State Farm charged against the policy was in the amount of $25,383.60. (Doc. 17 at ¶ 11). Hill alleges that State Farm reported to the IRS a gross distribution of $41,071.00 related to the first policy. (Doc. 17 at ¶ 11). For the 1970 policy, the allegedly outstanding premium amounted to $251.00 and the debt charged against the policy was in the amount of $30,967.29. (Doc. 17 at ¶ 18). Hill alleges that State Farm reported to the IRS a gross distribution of $32,845.00 related to the second policy. (Doc. 17 at ¶ 18).

Hill claims that State Farm never notified him that it was taking any of these actions and that he never received any distributions from either policy. (Doc. 17 at ¶¶ 19–20). Hill asserts that because he was unaware of State Farm's actions he did not report the distributions to the IRS, and as a result the IRS audited him, required him to pay back taxes, imposed a penalty, seized his $4,165.00 tax refund for 2013, and has since been garnishing his social security benefits. (Doc. 17 at ¶¶ 21–24).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012). Legal conclusions, unlike factual allegations, "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Courts apply a two-pronged approach when considering a motion to dismiss. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). First, a court must "eliminate any allegations in [a] complaint that are merely legal conclusions." Id. A court must then take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face" is subject to dismissal. Id. at 1289. Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cty., Ga., 960 F.2d 1002, 1010 (11th Cir. 1992).

The Eleventh Circuit has applied the "incorporation by reference" doctrine to Rule 12(b)(6) motions, allowing a court to consider documents attached to a motion to dismiss and take judicial notice of certain facts when the attached documents are (1) central to the plaintiff's claim and (2) undisputed. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." Id.

**DISCUSSION**

**A. Counts I & II: Fraudulent Inducement**

State Farm argues that Hill has failed to state a claim of fraudulent inducement under either Ohio or Florida law because he could not have justifiably relied on the agent's alleged oral misrepresentations regarding the effect of Hill's failure to pay the insurance policies' premiums. State Farm contends that the policies were integrated agreements that both expressly addressed what would happen if Hill failed to pay the premiums, and Hill, therefore, could not have justifiably relied on any statements that the agent made to the contrary. Hill argues in response that fraudulent misrepresentations made during negotiations or conversations prior to the formation of a contract cannot be merged into the subsequent written contract. The Court agrees with State Farm and grants its motion to dismiss as to Counts I and II of the Amended Complaint.

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). This Court must therefore apply Florida's conflict-of-laws rules to determine which state's substantive law governs Hill's tort claim. Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc., 773 F. Supp. 2d 1317, 1323 (M.D. Fla. 2011). For tort actions, Florida has adopted the "significant relationships test" of the Restatement (Second) of Conflict of Laws. Bishop v. Florida Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980).

Under this test, this Court must consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Id.; Restatement (Second) of Conflict of

Laws § 145 (1971). This Court has previously applied this test to a similar factual situation and ruled that when a plaintiff alleges that an insurance agent's fraudulent misrepresentations induced him into entering into an insurance contract, the location where the misrepresentations were made and the contract was created is the place where the injury occurred. Kelley v. Nat'l Union Ins. Co. of Pittsburgh, PA, No. 8:11-CV-613-T-24 AEP, 2012 WL 1934417, at *7 (M.D. Fla. May 29, 2012).

It is unclear from the pleadings where the alleged misrepresentations were made and where the insurance contract was created. The only evidence in the pleadings hinting at the location of either event is that Hill "communicated with State Farm's agent . . . in Ohio" about purchasing the policies and that Hill listed an Ohio mailing address in his applications for the policies. Although it seems probable that the representations and contracts were made in Ohio, the pleadings are not entirely clear on those issues. However, the result is the same whether Ohio or Florida law is applied.

Both states recognize a cause of action for fraudulent inducement, and their respective elements are essentially the same. Ohio law requires: "(1) a false representation concerning a fact . . . material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance." Lepera v. Fuson, 613 N.E.2d 1060, 1063 (Ohio Ct. App. 1992). Florida's cause of action is similar, requiring a plaintiff to show that (1) there was a misrepresentation of a material fact, (2) the person making the representation knew or should have known of its falsity, (3) the representation was made with the intent to induce the plaintiff's reliance, and (4) the plaintiff was injured due to justifiable reliance on the representation. Siever

v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009) (citing Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So. 2d 251, 253 (Fla. Dist. Ct. App. 2005)).

The dispositive element in this case is that of justifiable reliance. State Farm contends that Hill's fraudulent inducement claims should be dismissed because he could not have justifiably relied on alleged oral representations that were within the scope of the written insurance policies. Hill responds in a conclusory manner and without further elaboration or argument that the agent's alleged representations were not directly contradicted by the terms of the insurance policies. After reviewing the pleadings and the policies, the Court concludes that the alleged representations were within the scope of the policies' terms and Hill, therefore, could not have justifiably relied on them.

Under both Ohio and Florida law, a party is not justified in relying on oral representations that conflict with the terms of a subsequent written contract. ABM Farms, Inc. v. Woods, 692 N.E.2d 574, 579 (Ohio 1998) ("A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.") (internal quotation marks omitted); Hillcrest Pac. Corp. v. Yamamura, 727 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 1999) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.").

In his Amended Complaint Hill asserts that for both policies State Farm's agent represented to Hill "that there would not be any negative consequences if he was to stop paying the premium[s] on the whole life insurance polic[ies], and that the polic[ies] would not cancel, [they] just would not increase in value as much." This is the sole statement that Hill alleges

fraudulently induced him into entering into the two whole life insurance policies. However, both policies specifically address what would happen should Hill fail to pay his premiums.[2]

The Automatic Premium Loan provisions, which Hill affirmatively selected when he applied for the policies, explain that if he does not pay the policies' premiums then State Farm would automatically take out a loan against the policies on Hill's behalf to pay the unpaid premiums. Further, the Extended Term Insurance provision provides that, after the Automatic Premium Loan is applied, the whole life insurance policies would be automatically converted to term life insurance policies, with State Farm paying the benefits according to a detailed plan provided in each policy. Thus, the consequences of not paying the policies' premiums were expressly explained in the policies' terms.

Therefore, Hill could not have justifiably relied on any oral representations regarding the consequences of failing to pay his premiums. With the representations regarding the consequences of non-payment being the only sources of the alleged fraud, Hill cannot state a claim of fraudulent inducement regarding either policy as a matter of law. State Farm's Motion to Dismiss is **GRANTED** as to Counts I and II of the Amended Complaint, and those counts are hereby **DISMISSED with PREJUDICE**.

**B. Counts III & IV: Breach of Contract**

Hill next claims that State Farm breached the two insurance contracts by activating the Automatic Premium Loan provisions, making loans against the policies, converting the whole life insurance policies to term life insurance, and making distributions on the policies despite his

---

[2] Although Hill did not attach copies of the policies to either of his pleadings, State Farm included them with its Motion to Dismiss, and this Court will consider them along with the pleadings because (1) the policies are central to Hill's claims and (2) their authenticity is undisputed. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

being current on the premium payments. State Farm responds that Hill failed to pay his premiums and that its actions were, therefore, authorized under the policies.

"In diversity cases, the Court applies the substantive law of the forum, Florida, including Florida's choice of law rules." Kelley v. Nat'l Union Ins. Co. of Pittsburgh, PA, No. 8:11-CV-613-T-24 AEP, 2012 WL 1934417, at *5 (M.D. Fla. May 29, 2012). For contract actions, Florida applies the *lex loci contractus* doctrine and "applies the law of the state in which the contract was made." Id. As with the fraud claims, the pleadings do not provide sufficient factual information to enable this Court to determine where the insurance contracts were made. But again the difference is immaterial in this case, as under both Ohio and Florida law Hill has stated a plausible claim for breach of contract for both policies.

Under Ohio law, the elements for breach of contract are: "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." MMK Grp., LLC v. SheShells Co., LLC, 591 F. Supp. 2d 944, 963 (N.D. Ohio 2008). Florida law requires the plaintiff show (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007).

The parties do not dispute that the two insurance policies constitute valid contracts, nor do they dispute the existence of damages. The sole issue is whether Hill did in fact pay the policies' premiums. If he did, then, taking the allegations in the Amended Complaint as true, State Farm breached the contracts when it made loans against the policies, converted the term life insurance policies to whole life insurance, and distributed the policies' benefits; those actions were only authorized when premiums were unpaid. If Hill did not pay the policies'

premiums, then State Farm's actions could be considered proper under the terms of the policies and would not have breached the two contracts.

Hill alleged in his Amended Complaint that "all premiums were paid" for each policy "from the date it was issued through 2009." Looking first at the 1967 policy, its premium was due annually on November 9. Hill alleges that in January 2010 State Farm paid that policy's premium, converted it to term life insurance, and reported to the IRS a gross distribution to Hill of $41,071.00. This was approximately two months after the 2009 premium was due, and well before the due date for the 2010 premium. If Hill did in fact pay all premiums through 2009, as he alleges he did, then State Farm's actions were premature and in breach of the contract.

State Farm's actions related to the 1970 policy follow the same pattern. That policy's premium was due annually on September 2, and Hill alleges that in November 2009 State Farm paid the policy's premium, converted it to term life insurance, and reported to the IRS a gross distribution to Hill of $32,845.00. As with the first policy, this was approximately two months after the 2009 premium was due, and well before the due date for the 2010 premium. If Hill did in fact pay all premiums through 2009, as he alleges he did, then State Farm's actions related to the second policy were premature and in breach of the contract.

Thus, Hill has sufficiently stated a claim for breach of contract for each of the policies that is plausible on its face. State Farm's Motion to Dismiss is **DENIED** as to Counts III and IV of the Amended Complaint.

## C. State Farm's Alternative Motion to Strike

With the denial of State Farm's Motion to Dismiss Hill's breach-of-contract claims, State Farm moves in the alternative to strike all of Hill's allegations regarding damages resulting from the IRS's actions against Hill. State Farm argues that it is not liable for the IRS's actions and

Hill's failure to pay his taxes, and that those allegations are not pertinent to Hill's claims against State Farm. Hill responds that the IRS's actions and the resulting damages to Hill are the direct result of State Farm's breaches, and that the allegations are, therefore, pertinent to his claims against State Farm. The Court agrees with Hill and denies State Farm's Motion to Strike.

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading any matter that is "redundant, immaterial, impertinent, or scandalous." However, "[a] motion to strike is a drastic remedy, which is disfavored by the courts and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Thompson v. Kindred Nursing Centers E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (internal quotation marks omitted and alterations retained). "Florida follows the general rule that to be recoverable, damages for breach of contract must arise naturally from the breach, or have been in contemplation of both parties at the time they made the contract, as the probable result of a breach." Bland v. Freightliner LLC, 206 F. Supp. 2d 1202, 1211 (M.D. Fla. 2002) (internal quotation marks omitted). "Moreover, damages are recoverable so long as the actual consequence of breach of contract could have been reasonably expected to flow from the breach." Id.

The allegations that State Farm asks this Court to strike concern actions that the IRS took against Hill after State Farm allegedly breached its contracts with Hill. State Farm's argument that it cannot control the IRS's actions is off base, as that is not the determinative issue. The issue is whether the IRS's actions against Hill "could have been reasonably expected to flow from the breach[es]." If State Farm did indeed breach its contracts with Hill, fail to notify Hill of its actions, and then report those actions to the IRS, as Hill alleges, then it is reasonable to expect the IRS to take action against Hill when he inevitably fails to report the distributions that he does

not know about. Thus, the IRS's actions against Hill appear from the pleadings to have "arise[n] naturally from the breach[es]." As a result, State Farm's Alternative Motion to Strike is hereby **DENIED**. Accordingly, it is

**ORDERED** that State Farm's Motion to Dismiss be **GRANTED** as to Counts I and II of the Amended Complaint, and those counts are **DISMISSED with PREJUDICE**. The Motion to Dismiss is **DENIED** as to Counts III and IV. State Farm's Alternative Motion to Strike is also **DENIED**. The Defendant shall file an answer to the remaining counts of the Amended Complaint within ten (10) days of this date.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 1st day of April, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record